IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TODD STECKELBERG,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>COLONEL BRAD RICE, in his Individual Capacity, et al.,<br><br>　　　　　　　Defendants. | 4:15-CV-3069<br><br>MEMORANDUM AND ORDER |

　　　　This matter is before the Court on the defendants' motion to dismiss (filing 9). That motion will be granted.

## I. BACKGROUND

　　　　The plaintiff's operative complaint (filing 5) sets forth what can best be described as a series of workplace disputes that, according to the plaintiff, violate his rights under the U.S. Constitution and state law. The plaintiff, Todd Steckelberg, is a trooper with the Nebraska State Patrol. Filing 5 at 2. The defendants are the Nebraska State Patrol and several other employees of the State Patrol sued in their individual capacities: Colonel Brad Rice, Captain Brenda Konfrst, Lieutenant Kevin Ryan, Major Russ Stanczyk, Lieutenant Craig Loveless, and Lieutenant Kevin Bridges. Filing 5 at 2-4.

　　　　The plaintiff alleges that when Rice was his captain in O'Neill, Nebraska, the plaintiff applied for promotion to sergeant, but did not score as well on the ranking for that position because he had not received an annual evaluation. Filing 5 at 5. He filed an internal affairs complaint because of Rice's failure to follow policy and ensure that evaluations were performed. Filing 5 at 5. After filing the complaint, the plaintiff was called to a meeting with his lieutenant, sergeant, and Rice, where he was questioned about the complaint. Filing 5 at 5-6. Rice objected to the attendance of the plaintiff's union representatives and, according to the plaintiff, the meeting was "against contract and policy as to how an internal affairs complaint is to be handled." Filing 5 at 6. The disposition of the internal affairs proceeding is not addressed in the plaintiff's pleading, and it does not appear that the plaintiff is seeking legal relief relating to it. *See* filing 11 at 4.

　　　　The plaintiff also alleges that he was "supportive" of a female trooper who pursued a gender discrimination case against Rice, and that it "was well

documented" that Rice was investigated for "[p]roselytizing" by placing Bible verses on his wall, trying to have a prayer before a meeting, and placing religious pamphlets in employee mailboxes. Filing 5 at 6. The plaintiff alleges that Rice "continues to hold a grudge" against the plaintiff. Filing 5 at 6. But again, it does not appear that the plaintiff is seeking legal relief based on any of these allegations. *See* filing 11 at 4.[1]

The plaintiff alleges that due in part to the "hostile work environment" under Rice, he transferred to a different area, apparently in July 2006. Filing 5 at 4, 7. In March 2014, while working for the traffic services division, the plaintiff was involved in an early-morning pursuit that ended in a collision between the plaintiff's patrol vehicle and the vehicle he was pursuing. Filing 5 at 7. The plaintiff's narrative regarding the incident and its effects is somewhat hard to follow, but the gist of it is that the plaintiff was treated unfairly when the pursuit was investigated. Allegedly, a "pursuit critique" was performed; and Konfrst, Bridges, and Ryan (none of whose authority with respect to the plaintiff is clear) pressured the officers performing the critique to find that the plaintiff had violated policy during the pursuit. Filing 5 at 7-8.

The plaintiff filed a number of grievances with respect to the investigation, based on what he believed to be violations of "the Union Contract, policies and standard operating procedures." Filing 5 at 8-9. The grievances were denied, and according to the plaintiff, they were not handled in accordance with policy. Filing 5 at 9-10. The plaintiff alleges that "the Defendants" (it is not clear which ones) refused to provide him with documents, and modified other documents, that should have been provided to him under "the due process requirements of the Union Contracts, policies and Standard Operating Procedures." Filing 5 at 9. According to the plaintiff, he has been "shunned and isolated" by Konfrst, Bridges, and Loveless since those grievances were filed, and other officers are reluctant to associate with the plaintiff "for fear of being targeted by association." Filing 5 at 10. According to the plaintiff, when the arbitration was eventually decided, the arbitrator "found many violations of policy and procedure." Filing 5 at 14.

---

[1] In response to the defendants' confusion about the purpose of these allegations, the plaintiff asserts that they are "relevant to place the matter in context," but that "[t]here is no claim that seeks relief" for any of these allegations, and "counsel for the Defendants has no reason to think that there is. The pleading is clear as to the allegations and the purpose for them." Filing 11 at 3-4. But Fed. R. Civ. P. 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Allegations on which no relief is actually sought are not consistent with the purpose of Rule 8, because they create confusion as to what the pleader is actually seeking relief for.

While the arbitration hearing on those grievances was pending, the plaintiff applied for a "lateral transfer" to an executive protection position which, according to the plaintiff, would have meant overtime and more pay. Filing 5 at 10. Plaintiff claims to have been "the best qualified applicant for the position" but Rice did not award it to him. Filing 5 at 11. The plaintiff alleges that "[i]t has been state [sic] that Plaintiff 'might run his mouth' and 'right or wrong the Governor can't hear these things.'" Filing 5 at 11. The complaint does not identify who made these remarks, or where or when they might have been made.

After the arbitration hearing regarding the plaintiff's grievances concluded, but before the arbitrator's decision was issued, the plaintiff was directed to report to a meeting at State Patrol headquarters. Filing 5 at 11. The meeting took place on May 19, 2015, and included Rice, Konfrst, Stanczyk, and the plaintiff's union representation. Filing 5 at 11-12. The plaintiff was given a "'Supervisory Observation Form'" charging that the plaintiff had "'demonstrated poor judgment, a failure to follow orders and/or reckless 'hero' type behavior" in four incidents which "spanned dates of July 22, 2014, September or October of 2014, and April 21st of 2015." Filing 5 at 12. The plaintiff claims that the charges of misconduct were both untimely and false. Filing 5 at 12.

Nonetheless, the plaintiff was placed on a "PIP"[2] that required him to keep an activity log, keep his recording equipment on at all times, attend "EAP",[3] and ride along with the State Patrol chaplain for a shift. Filing 5 at 12. The "EAP" was required because, according to the form, the plaintiff "'is perceived to be ruminating about work day and night.'" Filing 5 at 13. The plaintiff and his union representative met with Rice and the commander of the professional standards division; at the end of that meeting, Rice said that the "PIP" would be put "on hold," but that the plaintiff should still attend "EAP." Filing 5 at 13. And the plaintiff was still required to do a ride-along with the chaplain, a Catholic priest. Filing 5 at 13-14.

The day after the arbitration was decided, Rice "showed up to vehicle check point which was Plaintiff's scheduled work on that day, at 6:30 pm." Filing 5 at 14. What Rice did after showing up, or whether his presence was in some way unusual or prejudicial to the plaintiff, is not clear from the complaint. The plaintiff also alleges that Rice

---

[2] The complaint does not explain what a "PIP" is, but the Court surmises this is a "performance improvement plan."

[3] Again, the complaint does not define "EAP," but the Court surmises that this is an "employee assistance plan."

- 3 -

> has, in the process of discussing plaintiff's Employment issues and more particulary [sic] the Executive Protection position for which he applied, made false defamatory and stigmatizing statement [sic] including wrongly claiming he had removed Plaintiff from the swat [sic] Team when he was in O'Niell [sic] at the request of other team members because he was not showing up for trainings, when the fact is, Plaintiff removed himself from the position due to a health condition at the time.

Filing 5 at 14.

Finally, the plaintiff alleges that after the instant lawsuit was initiated, Ryan was reassigned from internal affairs to headquarters troop. Filing 5 at 15. The significance to the plaintiff of this transfer is unclear. Before being transferred, Ryan allegedly filed an internal affairs complaint "listing himself as complainant and naming as witness Tim Young, who was their counsel at the arbitration hearing." Filing 5 at 15. "In the internal affairs complaint Defendant Ryan acknowledges that their counsel Tim Young requested a finding of dishonesty and acknowledges the arbitrator did not find him to be dishonest." Filing 5 at 15. It appears that the request for a "finding of dishonesty" was an argument, in the arbitration hearing, that the plaintiff was not credible, and that the arbitrator rejected this argument. *See* filing 5 at 15. But other than that, the plaintiff does not allege what else was in Ryan's internal affairs complaint, or even at whom it was directed.

About a month later, the plaintiff was provided with notice of Ryan's internal affairs complaint. Filing 5 at 16. At the same time, the plaintiff was given a letter signed by Rice that abated "'I.A. Case 15-018 . . . until the conclusion of the civil proceedings or until activated and continued at my discretion.'" Filing 5 at 16. The Court infers that "I.A. Case 15-018" is Ryan's internal affairs complaint, and not one of the plaintiff's grievances. The plaintiff alleges that the "civil proceedings" are the instant case and a proceeding before the Nebraska Commission on Industrial Relations (CIR). It is not explained who initiated the CIR proceedings or what issues are presented there.

Based on these facts, the plaintiff asserts what he styles as three claims for relief: (1) 42 U.S.C. § 1983 claims for violation of the U.S. Constitution (including the Due Process Clause and the First Amendment free speech right, right of association, and Establishment Clause), (2) a 42 U.S.C. § 1985 conspiracy to deny civil rights, and (3) retaliation for union membership in violation of Neb. Const. art. XV, § 13 and Neb. Rev. Stat. § 48-217. The defendants have moved to dismiss the plaintiff's complaint.

## II. STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly*, 550 U.S. at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

## III. DISCUSSION

The Court begins with a particular defendant, rather than a particular claim. In the entirety of the plaintiff's operative complaint, the only specific allegations against Loveless are that Loveless has "shunned and isolated" the plaintiff and that on the night shift, Loveless avoids the plaintiff. Filing 5 at 10. There are no facts supporting Loveless' personal involvement or responsibility for any alleged violations of the plaintiff's rights. *See Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999). Accordingly, in addition to the reasons explained below, the plaintiff's claims are dismissed as to Loveless because the plaintiff has failed to allege any facts showing Loveless' participation in the conduct that, according to the plaintiff, supports his claims for relief.

1. FEDERAL CONSTITUTIONAL CLAIMS

Although styled as a single "cause of action," the plaintiff's complaint actually implicates a number of different federal constitutional claims, each of which has unique elements. The Court will address them discretely below with respect to the individual defendants. But before doing so, the Court will address the plaintiff's § 1983 claims against the Nebraska State Patrol. Those claims are barred by sovereign immunity. The Eleventh Amendment bars an award of damages against a State in a § 1983 action.[4] *El-Tabech v. Clarke*, 616 F.3d 834, 837 (8th Cir. 2010). And while state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, the same doctrine does not extend to states or state agencies. *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007). Accordingly, the plaintiff's § 1983 claims against the Nebraska State Patrol will be dismissed.

(a) Due Process Clause

The plaintiff's complaint states that "[d]uring the proceedings the defendants failed to provide all documents to the Plaintiff as is required by contract to provide him with due process, and thus Plaintiff was deprived of Due process of law regarding his property interest in his employment." Filing 5 at 17. But it is not clear what property interest was at issue.

To establish a procedural due process violation, a plaintiff need not only show a protected interest, but must also show that he or she was deprived of that interest without sufficient process, i.e., without due process. *Swipies v. Kofka*, 419 F.3d 709, 715 (8th Cir. 2005). In this case, the grievance and arbitration proceedings in which the alleged failure to provide documents took place was, as best the Court can tell, resolved in the plaintiff's favor. The plaintiff certainly does not allege otherwise. An arbitration proceeding, followed by a finding of procedural irregularities, does not describe a due process violation—it actually describes due process.[5]

The plaintiff also alleges that "Plaintiff further had a liberty interest in his good name, which was damaged by each of the Defendant's actions, by making false defamatory and stigmatizing statement [sic] without notice to

---

[4] Contrary to the plaintiff's assertion, the Nebraska State Patrol is not a "political subdivision," *see* filing 5 at 2-3: it is a department of the State of Nebraska. *See*, Neb. Rev. Stat. § 81-2001; *Llanes v. Neb. State Patrol*, No. 4:06-CV-3155, 2007 WL 1321733, at *1 n.1 (D. Neb. Apr. 2, 2007).

[5] The Court also questions the plaintiff's equation of alleged contractual violations with due process violations. It is possible for a government employer to disregard policy or breach a contract without denying due process. But the Court need not resolve the particular requirements of due process when the proceedings concluded favorably to the plaintiff.

- 6 -

him or opportunity for a hearing." Filing 5 at 17. The only alleged "false defamatory and stigmatizing statement" that the Court can discern came from Rice, so the Court will focus on his alleged remarks.[6]

A person's reputation, alone, is not a protected liberty or property interest. But state action that both damaged a person's reputation and distinctly altered or extinguished a right or status previously recognized by state law, removing that interest from the recognition and protection previously afforded by the State, is sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013). For a defamatory statement to be actionable under § 1983, it must damage a person's standing in the community or foreclose a person's freedom to take advantage of other employment opportunities. *Jones v. McNeese*, 746 F.3d 887, 898 (8th Cir.) *cert. denied*, 135 S. Ct. 688 (2014).

The closest the plaintiff comes to this standard is associating Rice's allegedly defamatory remarks with the denial of the plaintiff's transfer to the executive protection detail.[7] But the requisite stigma has generally been found in cases in which the plaintiff has been accused of dishonesty, immorality, criminality, racism, or the like. *Id.* General allegations of misconduct and insubordination do not rise to the requisite level of constitutional stigma. *Mascho v. Gee*, 24 F.3d 1037, 1039 (8th Cir. 1994). And it appears, at least from the plaintiff's allegations, that the decision whether to transfer the plaintiff was Rice's. The plaintiff cannot link alleged defamation to a lost employment opportunity when the decisionmaker was also the defamer: even if the statements were false, Rice could not have misled himself.

In short, neither the alleged procedural irregularities in the plaintiff's grievance proceedings, nor the alleged defamation, state a claim for a violation of the Due Process Clause. Therefore, the plaintiff's procedural due process claim will be dismissed.

---

[6] The defendants point out that the plaintiff does not specify against which defendants he is bringing which claims, and contends as to several claims that they should be dismissed as to particular defendants because the complaint does not allege specific facts showing their participation in the conduct relating to those claims. Having determined that the plaintiff's complaint fails to state a claim in its entirety, the Court does not need to parse out whether it comes closer to stating claims against some defendants as opposed to others. But should the plaintiff elect to file a second amended complaint, he is encouraged to more specifically identify the defendants targeted by each claim.

[7] The plaintiff's brief also refers to Ryan's internal affairs complaint in support of this claim. Filing 11 at 23-24. But because the Court cannot tell from the pleadings what that contained, or how it related to the plaintiff, it does not support a claim for relief.

(b) First Amendment Free Speech

The plaintiff asserts that

> The actions of Defendants were motivated by Plaintiffs [sic] use of free speech and freedom of association in speaking out about matters of public concern and reporting blatant and repeated violations of policy contract and standard operating proceedings and of retaliation against other employees as well as plaintiff in violation of the First amendment rights to the US Constitution.

Filing 5 at 17.

A government employer cannot take adverse employment actions against its employees for exercising their First Amendment rights. *Shockency v. Ramsey County*, 493 F.3d 941, 948 (8th Cir. 2007). To establish a prima facie case of retaliatory termination, a plaintiff must allege that (1) his speech was protected by the First Amendment, (2) the governmental employer discharged him from employment, and (3) the protected speech was a substantial or motivating factor in the defendant's decision to take the adverse employment action. *Rynders v. Williams*, 650 F.3d 1188 (8th Cir. 2011); *Davison v. City of Minneapolis*, 490 F.3d 648 (8th Cir. 2007); *see also Wagner v. Jones*, 664 F.3d 259 (8th Cir. 2011).

But the first step in determining whether the First Amendment shields a public employee is whether the employee's speech can be fairly characterized as constituting speech on a matter of public concern. *Belk v. City of Eldon*, 228 F.3d 872, 878 (8th Cir. 2000); *see, generally*, *Connick v. Myers*, 461 U.S. 138, 147 (1983); *see also Pickering v. Board of Ed.*, 391 U.S. 563, 568 (1968). For instance, speech that criticizes a public employer in his capacity as a public official, or speech about the use of public funds, touches upon a matter of public concern. *Id.* But when a public employee's speech is purely job-related, that speech will not be deemed a matter of public concern. *Id.* at 879. Unless the employee is speaking as a concerned citizen, and not just as an employee, the speech does not fall under the protection of the First Amendment. *Id.*

And here, the plaintiff does not allege speech on a matter of public concern. To be sure, it is not dispositive that the plaintiff's speech—his internal grievances about alleged violations of his procedural rights—took place within his employer, or concerned his employment.[8] *See Garcetti v.*

---

[8] The only potential speech outside those grievances is the plaintiff's allegation that he was "supportive of a female trooper [who] had a gender discrimination complaint." Filing 5 at 6. The plaintiff's brief expressly disclaims any reliance on that allegation in support of his claims for relief. Filing 11 at 3-4. Yet, a few pages later, he asserts it in support of his free

*Ceballos,* 547 U.S. 410, 420-21 (2006). But as best the Court can tell from the plaintiff's allegations, the plaintiff's grievances were not addressed to the public outside the State Patrol, and the plaintiff was not acting as a concerned public citizen, but only as an employee concerned with the circumstances of his own employment. *See Bailey v. Dep't of Elementary & Secondary Educ.,* 451 F.3d 514, 520 (8th Cir. 2006). As the U.S. Supreme Court has explained in the analogous context of the Petition Clause,

> [a] petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context.
>
> Of course in one sense the public may always be interested in how government officers are performing their duties. But as the *Connick* and *Pickering* test has evolved, that will not always suffice to show a matter of public concern. A petition that involves nothing more than a complaint about a change in the employee's own duties does not relate to a matter of public concern and accordingly may give rise to discipline without imposing any special burden of justification on the government employer. The right of a public employee under the Petition Clause is a right to participate as a citizen, through petitioning activity, in the democratic process. It is not a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts.

*Borough of Duryea, Pa. v. Guarnieri,* 131 S. Ct. 2488, 2501 (2011) (citations and quotations omitted).

What the plaintiff has alleged here is precisely the sort of everyday employment dispute that the Supreme Court has explained lacks constitutional significance. Accordingly, the plaintiff's free speech claim will be dismissed.

### (c) First Amendment Establishment Clause

The plaintiff alleges that his "right to freedom of religion was affected by the insistence that he do a ride along with [the chaplain]." Filing 5 at 17. Although the complaint does not identify a particular "right to freedom of

---

speech claim. Filing 11 at 17. The contradiction is confusing. But regardless, the allegation does not help the plaintiff: he has not alleged what it meant to be "supportive," and alleges no facts that would suggest any connection between that support and any of the defendants' other alleged actions.

religion," his brief specifically bases the claim on the Establishment Clause. Filing 11 at 7-9.

The essence of the Establishment Clause is its prohibition of coercion by governmental power applied for the benefit of religion. *Donovan v. Tony & Susan Alamo Found.*, 722 F.2d 397, 403 (8th Cir. 1983). Such coercion may consist in compulsion to participate in religious activities or ceremonies, or in compulsion to pay taxes for the support of religious activities or programs. *Id.* The prohibition forbids governmental compulsion either "to frequent or support" any religious activity. *Id.* Simply put, the Constitution forbids the government from conveying the message that it decisively endorses a particular religious position. *Warnock v. Archer*, 380 F.3d 1076, 1080 (8th Cir. 2004).

Harassment by government employers may constitute an Establishment Clause violation. *See id.* at 1082. But the plaintiff alleges no harassment here. *Compare id.* He does not allege that the chaplain subjected him to any religious proselytizing. *Compare id.* He does not, in fact, allege anything regarding the chaplain's activities, or his own duties, during that shift. It is not the plaintiff's responsibility to explain why the ride-along was demanded of the plaintiff. But the Court can find no legal basis to conclude that being asked to ride in a car with a chaplain is a *per se* violation of the Establishment Clause. Accordingly, the plaintiff's Establishment Clause claim will be dismissed.

(d) First Amendment Free Association

In his brief, the plaintiff asserts that he "has a right under the first amendment Freedom of Association clause to exercising the benefits of his union membership." Filing 11 at 9. Short of including the words "Freedom of Association" in the subject heading for his "First Cause of Action," such a claim is not identified in the complaint. *See* filing 5 at 17. And even construed broadly in light of the brief, the complaint does not state such a claim for relief.

Union membership is protected by the right of association under the First and Fourteenth Amendments. *Am. Fed'n of State, Cty., & Mun. Emp., AFL-CIO v. Woodward*, 406 F.2d 137, 139 (8th Cir. 1969); s*ee Int'l Ass'n of Firefighters, Local No. 3808 v. City of Kansas City*, 220 F.3d 969, 972 (8th Cir. 2000). And the right of union membership would be meaningless unless an employee's right to participate in union activities was also recognized. *Roberts v. Van Buren Pub. Sch.*, 773 F.2d 949, 957 (8th Cir. 1985).

But the plaintiff must still allege participation in union activities and show that he has been retaliated against based, in substantial part, on those activities. *See id.* at 958; *see also, e.g., Lunow v. City of Oklahoma City*, 61 F.

App'x 598, 606 (10th Cir. 2003). The only union activities alleged by the plaintiff are his union membership and his reliance on the union contract and union representatives in prosecuting his grievances. That is a far cry from union organization or advocacy; it does not distinguish the plaintiff from any other member of the union, which presumably includes every state trooper. And the only allegation that even hints at a particular anti-union animus on the part of any defendant is the allegation that Rice objected, sometime before July 2006, to the presence of the plaintiff's union representative at a meeting. Filing 5 at 4-7. That is, again, an allegation that the plaintiff's brief expressly disclaims as a basis for relief, *see* filing 11 at 3-4, and even if proved would be insufficient to support any inference of retaliation for union activity. The plaintiff's free association claim—his final federal constitutional claim—will be dismissed.

### 2. 42 U.S.C. § 1985 CONSPIRACY TO DENY CIVIL RIGHTS

The plaintiff's second enumerated cause of action is a "conspiracy to interfere with civil rights." Filing 5 at 18. The plaintiff specifically alleges that the defendants, "in association with one another, agreed to deter Plaintiff of from [sic] testifying, freely, fully, and truthfully, or to injure the Plaintiff on account of his having so attended or testified, in violation of 42 U.S.C. 1985(2)." Filing 5 at 18. 42 U.S.C. § 1985(2) provides that a person may sue for damages

> [i]f two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws . . . .

But, under the first part of § 1985(2), a "court of the United States" is a federal court, not a state court, and certainly not an arbitration proceeding. *See*, 28 U.S.C. § 451; *Biby v. Bd. of Regents of Univ. of Neb. at Lincoln*, 338 F. Supp. 2d 1063, 1076 (D. Neb. 2004); *Shaw v. Garrison*, 391 F. Supp. 1353, 1370 (E.D. La. 1975), *aff'd*, 545 F.2d 980 (5th Cir. 1977), *rev'd sub nom. on other grounds*, *Robertson v. Wegmann*, 436 U.S. 584 (1978). Second, a claim for interference in a state judicial proceeding under the second part of § 1985(2) requires the plaintiff to establish a class-based animus. *See*, *Kush v. Rutledge*, 460 U.S. 719, 725 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Biby*, 338 F. Supp. 2d at 1076.

In his brief, the plaintiff argues that somehow, the defendants conspired to deter him from testifying in *this lawsuit*. Filing 11 at 28-30. It is curious, then, that the plaintiff first alleged his § 1985(2) claim in his initial complaint, which was filed in state court and removed to this Court by the defendants. *See* filing 1. In other words, the plaintiff's § 1985(2) claim evidently preceded the federal court action on which the plaintiff now claims it was based. But even accepting that, the complaint lacks any factual allegations suggesting that the defendants have attempted to interfere with the plaintiff's participation in this case.

The plaintiff also suggests that he can premise a claim for conspiracy to violate his civil rights on § 1983. The plaintiff did not raise such a claim in his complaint. But even then, to prove a § 1983 conspiracy claim against a particular defendant, the plaintiff must show that the defendant conspired with others to deprive him or her of a constitutional right, that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy, and that the overt act injured the plaintiff. *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). And the plaintiff must prove a deprivation of a constitutional right or privilege. *Id.* Having concluded that the plaintiff has not alleged deprivation of a constitutional right or privilege, the Court likewise concludes that his conspiracy claim is without merit. *See id.*

3. Neb. Const. art. XV, § 13 and Neb. Rev. Stat. § 48-217

Neb. Const. Art. XV, § 13 provides that

> No person shall be denied employment because of membership in or affiliation with, or resignation or expulsion from a labor organization or because of refusal to join or affiliate with a labor organization; nor shall any individual or corporation or association of any kind enter into any contract, written or oral, to exclude persons from employment because of membership in or nonmembership in a labor organization.

Neb. Rev. Stat. § 48-217 gives effect to that provision, in slightly broader but essentially similar terms. But the defect in this claim is the same as for the plaintiff's free association claim, explained above: the plaintiff's allegations are insufficient to suggest that he was denied employment for any reason relating to union membership or activity.[9]

## IV. CONCLUSION

For the foregoing reasons, the plaintiff's complaint will be dismissed. The plaintiff has asked for leave to replead. Filing 11 at 1. While the plaintiff has already filed an amended complaint, that operative complaint was filed to include new allegations that arose after the suit was brought, and was filed before the defendants moved to dismiss. Accordingly, the Court finds that the plaintiff should be allowed to file a second amended complaint. Such complaint, if any, shall be filed on or before April 21, 2016.

IT IS ORDERED:

1. The defendants' motion to dismiss (filing 9) is granted.

2. The plaintiff's complaint is dismissed.

3. The Clerk of the Court is directed to set an amended complaint deadline of April 21, 2016.

Dated this 31st day of March, 2016.

BY THE COURT:

John M. Gerrard
United States District Judge

---

[9] And in addition, the State Patrol is immune from suit in federal court for this claim. *See Doran By & Through Doran v. Condon*, 983 F. Supp. 886, 890-91 (D. Neb. 1997) (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 237–38 (1985)).