# IN THE UNITED STATES DISTRICT COURT
## FOR THE STATE OF NEBRASKA

| | | |
|---|---|---|
| TODD STECKELBERG , | ) | Case No. 4:15-cv-3069 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **SECOND AMENDED** |
| COLONEL BRAD RICE, in his Individual | ) | COMPLAINT |
| Capacity; CAPTAIN BRENDA KONFRST, | ) | |
| In her Individual Capacity, LIEUTENANT | ) | |
| KEVIN RYAN, In his Individual Capacity | ) | |
| MAJOR RUSS STANCZYK, In his | ) | |
| Individual Capacity; LIEUTENANT | ) | |
| CRAIG LOVELESS, Individually and THE | ) | |
| NEBRASKA STATE PATROL, and | ) | |
| LIEUTENANT KEVIN BRIDGES in his | ) | |
| Individual capacity, | ) | |
| Defendants. | ) | |

## INTRODUCTION

COMES NOW the Plaintiff, Todd Steckelberg and for his causes of action against Defendants, Colonel Brad Rice, Individually; Captain Brenda Konfrst, individually; Lieutenant Kevin Ryan, individually; Major Russ Stanczyk , Lieutenant Kevin Bridges, Individually; Lieutenant Craig Loveless, Individually and the Nebraska State Patrol, alleges and states as follows:

1. This is an action for monetary relief against the individual Defendants

for acts in violation of 42 USC §1983, of Plaintiff's Due Process Rights as guaranteed by the Fourteenth amendment to the US Constitution, violations of Plaintiff's First Amendment rights, plaintiff's rights pursuant to 42 USC 1985 (2) and for costs and attorney's fees pursuant to 42 U.S.C. §1988, and alternatively for Violations of Nebraska Revised Statute§48-217.

2.  This action is brought to redress federal and state claims in state Court.

3.  Venue is proper in this Court since the Plaintiff lives in Douglas County, Nebraska, and the Defendant's Colonel Rice, Lieutenant Kevin Ryan and Major Russ Stanczyk work in Lancaster County Nebraska.  The Defendant Nebraska State Patrol is headquartered in Lancaster County Nebraska and many of the operative facts occurred in Lancaster County, Nebraska.

## PARTIES

4.  Todd Steckelberg, is a male citizen and resident of Elkhorn, Douglas County, Nebraska and a Trooper for the Nebraska State patrol for the last 25 years.

5.  Defendant, Nebraska State Patrol is a political subdivision duly formed and existing under the laws of the State of Nebraska.  Defendant State Patrol is sued for injunctive relief and attorney fees, and for damages on the third cause of action.

6.  Defendant, Colonel Brad Rice at times relevant hereto was the

Colonel for the Nebraska State Patrol for the State of Nebraska. Defendant, Rice is sued in his individual capacity.

7. Defendant, Brenda Konfrst, at all times relevant hereto was a Captain for Defendant, Nebraska State Patrol. Defendant Konfrst, is sued in her individual capacity.

8. Defendant, Lieutenant Kevin Ryan, at all times relevant hereto was the Internal Affairs Lieutenant for Defendant, Nebraska State Patrol for the State of Nebraska. Defendant, Ryan is sued in his individual capacity.

9. Defendant, Major Russ Stanczyk, at all times relevant hereto was a Major for Defendant, Nebraska State Patrol for the State of Nebraska. Defendant, Stanczyk is sued in his individual capacity.

10. Defendant, Lieutenant Craig Loveless, at all times relevant hereto was a Lieutenant for Defendant, Nebraska State Patrol for the State of Nebraska. Defendant, Loveless is sued in his individual capacity.

11. Lieutenant Kevin Bridges, at all times relevant hereto was a Lieutenant for Defendant, Nebraska State Patrol for the State of Nebraska. Defendant, Bridges is sued in his individual capacity.

## FACTS

12. Plaintiff Todd Steckelberg is a Trooper with the Nebraska State Patrol

and has worked for the State patrol since September 4, 1990 Steckelberg's current work assignment is within Traffic Services out of the Omaha, Nebraska office of the Nebraska State Patrol and has been since  July 31, 2006.

13.  Trooper Steckelberg is a member of the State Trooper Association of Nebraska, which is a Labor Union under the State Law Enforcement Bargaining Council.

14.  Previous to his assignment as Trooper with the Traffic Services Division, Omaha Nebraska Office, Steckelberg worked in Traffic Services Division out of O'Neill, Nebraska where Defendant Colonel Brad Rice was at that time his Captain.

15.  At all times Trooper Steckelberg performed the positions of his employment admirably and when he has had annual evaluations, which is for most of his 25 years, he has been ranked "More than Satisfactory" and "Outstanding" in the dimensions for which he is evaluated.

16.  While working in O'Neil, Nebraska, under the supervision of Defendant Brad Rice, who was at that time his Captain, Steckelberg had applied for promotion to a Sergeant position.

17.  The ranking for the Sergeant position is weighted heavily on the scores given in the last annual evaluation.

18.  Because an annual evaluation had not been performed Steckelberg

did not score as well on the Sergeant promotional list.

19. Because Defendant Rice's responsibility was to see that the evaluations were done, and had not followed policy, Steckelberg filed an internal affairs complaint.

20. After the filing of the internal affairs complaint Steckelberg was called into a meeting with Defendant Rice who was then Steckelberg's Captain, and Steckelberg's Lieutenant and Sergeant were all waiting in the conference room for him and Defendant Rice wanted to question Steckelberg about the internal affairs complaint filed.

21. Trooper Steckelberg had union representatives who were going to attend the meeting and Defendant Rice objected to their attendance and slammed his notebook and pen on the table declaring "no one is leaving this room until I get some answers" about what the Internal Affairs complaint was about. This is against contract and policy as to how an internal affairs complaint is to be handled.

22. Steckelberg was also supportive of a female trooper had a gender discrimination complaint against Defendant Rice which ended in a favorable jury verdict of damages for the female trooper. The same Trooper served as his STAN representative.

23. In addition it was well documented that Defendant Rice was

investigated for Proselytizing while serving as a Captain for the Patrol in Norfolk, Nebraska for installing a Bible verses on the wall and wanting to have a prayer before a meeting and for placing religious pamphlets in employee mailboxes at the Norfolk State Patrol office.

24.  For this, Defendant Rice continues to hold a grudge against the Plaintiff, in addition to the motivations as listed below.

25. Due in part to the hostile work environment by Defendant Rice, Steckelberg ultimately transferred to the Omaha area.

26. On or about March 25th , 2014, while working in his position as Trooper for the Traffic Services division out of Omaha Nebraska, Steckelberg was involved in a vehicle pursuit which the vehicle he was pursuing ultimately struck his patrol vehicle.  At the time of the early morning, there was one other Trooper assigned and working in the whole state of Nebraska and no Traffic Division Supervisor on duty.

27. When a pursuit occurs there is a requirement that the dispatcher call a supervisor and report that a trooper is engaged in a pursuit, however that was not done in this circumstance because the dispatcher was the only dispatcher on duty and there was no Traffic Supervisor on duty and she would have had to call a supervisor on their cell phone.

28. As a result of being in a pursuit, there are policies and procedures to

be followed involving the preparation by a supervisor of a pursuit critique.

29. The pursuit critique having been performed, found policies and procedures had been followed. Defendant Captain Konfrst had signed off on the finding of the policies and procedures being followed as troop commander on March 25th, 2014.

30. On or about April 3, 2014, The Sergeant who had done the critique contacted Steckelberg, because he was pressured to redo the pursuit critique by Defendant Captain Konfrst and Defendant Lieutenant Bridges, to make a finding that there had been a violation of policy that Steckelberg had not called a supervisor prior to performing a Tactical Vehicle Intervention. As a result of the revised finding, the Sergeant also filed an internal affairs complaint to provide due process to determine whether the alleged violation of policies or procedures.

31. A different Sergeant was assigned to investigate the internal affairs complaint. That sergeant also initially found the allegations of violation of policy to be "Unfounded."

32. The Sergeant who had done the internal affairs investigation was pressured to redo the interview of Steckelberg and to change his findings to "Founded" by Defendant Lieutenant Ryan.

33. Steckelberg who reasonably believed that the Union Contract, policies

and standard operating procedures were being violated, filed a number of grievances.

34. Rather than having the grievances answered by the responsible decision maker, Defendant Lieutenant Ryan, answered the first 6 grievances with a "blanket denial".  It is believed that Defendant Lt.Ryan met with Defendant Captain Konfrst and Defendant Lt. Bridges and others before making this denial.

35. After the first 6 grievances were mishandled in this fashion the Defendant Major Stanczyk, after a meeting including Defendant Lt. Kevin Ryan, Defendant Cpt. Konfrst, Defendant Lt. Briges, and Defendant Stanczyk, and others "deemed" Major Stanczyk to be the step one decision maker for the grievances, at which time  answered with a simple "denied!"

36. During the grievance proceeding the Defendants refused to turn over documents in a timely fashion as is required under the due process requirements of the Union Contracts, policies and Standard Operating Procedures.  The original Pursuit critique signed and approved by Captain Konfrst was never provided and in fact it is presumed to have been destroyed.  Original official grievance documents were modified by white out and by scribbling on the documents such to obliterate who had signed and reviewed the same.

37. During the grievance proceedings **in 2014-2015**the Defendant Captain Konfrst called the plaintiff into a meeting and he asked a union

representative to attend. Defendant Konfrst denied his request for representation and then she commenced to discuss his grievances.

**38. From 2014 and continuing into 2015, the Plaintiff filed at least six grievances regarding violations of the contract, and the inability to utilize the rights available through the contract and his exclusion of having union representation and advocacy of the rights protected by the union.**

39. Since the Plaintiff has filed the grievance he has been shunned and isolated by Defendants Capt Konfrst, Lt Bridges and Lt. Loveless.

40. While on the day shift, when Plaintiff was in the office neither the Captain Konfrst or Lt. Bridges would even acknowledge him following the filing of grievances.

41. Now on night shift Defendant Lt. Loveless avoids Plaintiff.

42. Other coworkers and outside agency officers are reluctant to talk to Plaintiff or stop and eat with him for fear of being targeted by association.

43. Plaintiff is the most senior trooper on the night shift and yet he is not training any of the 7 new troopers recently hired on in the Omaha area.

44. On March 6, 2015, while the arbitration hearing on the grievances was pending, Plaintiff applied for a lateral transfer to a position of Trooper –Executive Protection. This would have been a substantial pay increase for him due to the

amount of overtime involved and would have meant an extra $20,000-$25,000 annually.

45. Plaintiff was interviewed with an interview board for the position and was the best qualified applicant for the position. Plaintiff had more years of experience on the force, and more relevant experience than the individual selected for the position.

46. Plaintiff was not awarded the executive protection position by Defendant Colonel Rice.

47. **Near the time that the decision was made, Colonel Rice stated** that Plaintiff "might run his mouth" and "right or wrong the Governor can't hear these things."

48. **Colonel Rice's statements** demonstrate that **the Plaintiff was not awarded the position** in retaliation for the Plaintiff's speaking out on matters of public concern.

49. The hearing regarding the grievances spanned two and a half days, the final portion of the day being May 18th, 2015.

50. As Plaintiff drove from Lincoln after the hearing to his troop area near Omaha Nebraska, he called in as required. He was advised by Defendant Captain Konfrst that he was to report to a meeting at the Headquarters in Lincoln for a meeting with the Colonel the following day.

51.     On May 19th, 2015, at a meeting with the Defendant Colonel Rice, Lieutenant Colonel Tom Schwarten, Defendant Captain Konfrst, Defendant Major Russ Stanczyk , Trooper Steckelberg  and his union representation was presented with a "Supervisory Observation Form" alleging in part  he had "demonstrated poor judgment, a failure to follow orders and/or reckless "hero" type behavior." The allegations included four incidents which spanned dates of July 22, 2014, September or October of 2014, and April 21st of 2015.  Under the union contract, Article 29.6.3,  a Supervisory Observation Form is to be initialed by the union member  within 14 days of the agency's awareness of the occurrence, so all of the incidents listed were untimely, and in addition the allegations made, therein of supposed misconduct were false.  No member of human resources attended the meeting.

52.     Additionally Plaintiff was placed on a PIP including, among other things, the following requirements:

a.) Maintain a daily log of his activities and provide it to Defendant Captain Konfrst;

b.) Keep his video camera and audio recording  on at all times during his shift;

c.) Attend mandatory supervisory referral to EAP as set out below;

d.) Ride along with Chaplain, Father Tomlinson for a minimum of one full shift in June, 2015;

53. Additionally Plaintiff was required to report to EAP, because in the words on the document referring him to EAP, "Employee is perceived to be ruminating about work day and night."

54. A witness who was subpoenaed to testify on behalf of the Plain**ti**ff at the arbitration was also presented with a Supervisory Observation Form.

55. On May 22, Plaintiff and his union representative met with Defendant Colonel Rice and Captain Caradori (Professional Standards Division Commander) to discuss the fact that the matters raised in the Supervisory Observation Form were not factual and his Sergeant nor his Lieutenant were not consulted with respect to the same.

56. Captain Caradori who indicated he  had never seen an SOF like this before as it was over 14days old and not even filled out by his immediate supervisor, nor was he or the Lieutenant aware of it.

57. At the end of the meeting the Defendant Colonel Rice indicated he would put the PIP on hold, but he wanted Plaintiff to still attend the EAP.

58. On May 31, Plaintiff arrived at work and was advised that he was required to do his ride along with the Chaplain, Father Thomlinson, who is a catholic Priest.

59. Plaintiff did as directed, he did ask the Father what the purpose was of the ride along and whether he knew what religion Plaintiff was, for which Father Thomlinson did not have answers.

**60.    The ride along was to be part of the Plaintiff's performance improvement plan, however, no objective toward improving the Plaintiff's performance was articulated.**

**61.    The Plaintiff believed that the ride along with the chaplain was an effort by Rice to further proselytize to the Plaintiff the Chaplain's particular religion, which was consistent with Rice's prior actions.**

**62.    The Plaintiff believed that Rice included this in the performance improvement plan in an attempt to further retaliate against the Plaintiff for his prior complaints against Rice for violating the establishment clause as there was no performance improvement objective articulated to the Chaplain or the Plaintiff.**

63. The arbitration was decided on June 16, 2015, found many violations of policy and procedure including not following the due process requirements of providing the documents in advance and of modifying the original grievance documents with white out and scribbling.

64. On June 17th, 2015 the Defendant Colonel Rice showed up to vehicle check point which was Plaintiff's scheduled work on that day, at 6:30 pm.

**65.**   It was highly unusual for the Commander to come to the vehicle check point. In the Plaintiff's 25 years of employment he never had the Colonel the Lt. Colonel or even a major show up at a vehicle check point. Rice had no stated purpose to be at the checkpoint and to the Plaintiff and stated "you didn't think you would get away without talking to me did you?" and shook his hand and said "we will work through this."

**66.**   Plaintiff believed that Rice came to the vehicle check point to attempt to keep the Plaintiff from discussing the actions taken against him and in an attempt to take further retaliatory disciplinary action against the Plaintiff, because Rice had been known to do this sort of thing to others who had spoken out on matters of public concern before.

67. Defendant Colonel Rice has, in the process of discussing plaintiff's Employment issues and more particularly the Executive Protection position for which he applied, made false defamatory and stigmatizing statement including wrongly claiming he had removed Plaintiff from the **SWAT** Team when he was in O'Neill at the request of other team members because he was not showing up for trainings, when the fact is, Plaintiff removed himself from the position due to a health condition at the time.

68. Additionally as a part of the arbitration hearing Defendants in their

post trial brief, attempted to have the arbitrator make a finding that he was non-credible, which was not true, not at issue in the proceedings and would have seriously impacted his ability to perform in his chosen profession. On June 16, 2015 the Arbitrator in his findings specifically stated he did not find Plaintiff to be dishonest.

69. Three days after the filing of the complaint in this case, on June 22, 2015 Defendant, Lieutenant Kevin Ryan was told he was being reassigned from Internal Affairs Lieutenant to Headquarters Troop Lieutenant.

70. On his final day as Internal Affairs Lieutenant Defendant Ryan filed an "801" which is an internal affairs complaint listing himself as complainant and naming as witness Tim Young, who was their counsel at the arbitration hearing.

**71. The 801 specifically states that, "Trp. Steckleberg is believed to have been dishonest by his reporting, his prepared statement, and his admission during the IA about performing a TVI."**

**72. The basis of Defendant Ryan's 801 is based entirely upon evidence that was available and evaluated by the Arbitrator previously, not based on any evidence that the arbitrator had not already made findings about.**

73. In the internal affairs complaint Defendant Ryan acknowledges

that their counsel Tim Young requested a finding of dishonesty and acknowledges the arbitrator did not find him to be dishonest.

74. No request was made to the arbitrator to modify the award nor has any motion to vacate the decision of the arbitrator has been made, the Defendants are judicially precluded from re-litigating the issue.

**75. A finding of dishonesty would require a disclosure by prosecution that the Plaintiff had been found to be dishonest pursuant to _Giglio v. United States_, 405 U.S. 150 (1972). Such a determination would negatively impact the Plaintiff's ability to continue to work in law enforcement.**

76. Plaintiff was provided no notice that the complaint had been made until July 27, 2015, when he was presented with the information by Defendant, Captain Konfrst.

77. At the same time as being presented the notice and complaint, Plaintiff was additionally presented with a letter, dated five days earlier, July 22, 2015, addressed to his home address authored and signed by Defendant, Colonel Brad Rice referring to the internal affairs allegation and stating:

> "To avoid interfering with the ongoing civil proceedings, I believe that I.A. Case 15-018 should be placed into a state of abeyance.
>
> I.A. Case 15-018 will remain in abeyance until the conclusion of the civil proceedings or until activated and continued at my discretion."

76.    The civil proceedings to which Defendant Rice refers are these proceedings as well as a proceeding at the CIR.

78.    It is apparent that Defendant Rice has suspended the 801 proceedings in an effort to deter the Plaintiff from fully adjudicating the claims presently before this court.

**79.    All Defendants have worked with each other to deprive the Plaintiff of his rights as guaranteed under the Fourteenth Amendment and by extension the First Amendment of the United States Constitution.**

**80.    As a result of all Defendant's concerted efforts to preclude the Plaintiff from pursuing his right to due process, his liberty interests in his good name, and other liberty interests, pursuing his complaints of violations of the First Amendment, in speech and freedom of religion, the Plaintiff has been damaged in the form of violation of his rights as well as financial damage and expenses.**

## FIRST CAUSE OF ACTION

### (Due Process Violations; Liberty Interest, First Amendment; Freedom of Association; Freedom of Religion)

81.    Plaintiff incorporates paragraphs one through 80 as though fully set out herein verbatim.

82. During the proceedings the defendants failed to provide all documents

to the Plaintiff as is required by contract to provide him with due process, and thus Plaintiff was deprived of Due process of law regarding his property interest in his employment.

83. Plaintiff further had a liberty interest in his good name, which was damaged by each of the Defendant's actions, by making false defamatory and stigmatizing statement without notice to him or opportunity for a hearing.

84. The actions of Defendants were motivated by Plaintiffs use of free speech and freedom of association in speaking out about matters of public concern and reporting blatant and repeated violations of policy contract and standard operating proceedings and of retaliation against other employees as well as plaintiff in violation of the First amendment rights to the US Constitution. Additionally the Plaintiff's right to freedom of religion was affected by the insistence that he do a ride along with Father Thomlinson.

85. The actions by Defendants are the direct and proximate cause of damages to Plaintiff.

86. As a result of the actions of Defendants, Plaintiff has suffered lost wages past and future, emotional distress, damage to his personal and professional reputation, and humiliation.

**SECOND CAUSE OF ACTION**

**(Against All Defendants Conspiracy to Interfere With Civil Rights)**

87. Plaintiff incorporates paragraphs one through 86 as though fully set out herein verbatim.

88.  Defendants, in association with one another, agreed to deter Plaintiff of from testifying, freely, fully, and truthfully, or to injure the Plaintiff on  account of his having so attended or testified, in violation of 42 U.S.C. 1985(2).

89. All defendants had a mutual understanding of the unlawful objective and of the means of accomplishing such objective.

90.  The actions of Defendants are a direct and proximate cause of injuries to Plaintiff.

91.  As a result of the actions of Defendants, Plaintiff has suffered lost wages past and future, emotional distress, damage to his personal and professional reputation, inconvenience and humiliation.

**Nebraska Const Art. XV§13 Neb Rev. Stat. 48-217**

92.  Plaintiff incorporates all allegations in paragraph 1 through 91 as though fully set out herein.

93. The foregoing actions of Defendant constitute a violation of Nebraska Constitution Article XV§13 and Nebraska Revised Statute §48-217 for depriving the Plaintiff of his employment due to his union membership and activity.

94. As a result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer undue hardship, great emotional distress, humiliation, embarrassment, inconvenience, loss of enjoyment of life, damage to his reputation, personal and professional, which entitles her to compensatory damages.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs respectfully request this Court to issue a judgment against the Defendants and:

a) Declare the acts described herein as violating rights guaranteed to the Plaintiff;

b) Order Defendants to refrain from similar acts in the future;

c) Award damages to compensate Plaintiffs for lost wages past and future, damage to reputation, emotional distress, and humiliation;

d) Award the Plaintiff punitive damages from the individual Defendants.

e) Award the Plaintiff fair and reasonable attorney fees herein

incurred, and

f) Award the Plaintiff such further relief as the Court deems just and proper.


Dated this 21st day of April, 2016.

TODD STECKELBERG, Plaintiff,

By /s/ Joy Shiffermiller_____
      Joy Shiffermiller, #18164
      Shiffermiller Law Office, P.C., L.L.O.
      1002 G Street
      Lincoln, Nebraska 68508
      402-484-7700
      402-484-7714 (fax)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of April, 2016, I electronically filed the foregoing **Second Amended** Complaint with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Dave Lopez
Stephanie Caldwell
Attorney General's Office
2115 State Capitol
Lincoln, Nebraska 68509



          _____ *Joy Shiffermiller* _____
             Joy Shiffermiller